```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                  CHARLOTTE DIVISION
                   3:06CV337-02-C
                    (3:05CR52-C)
```

PERRY ODELL NICHOLSON,        )
    Petitioner,              )
                                 )
        v.                   )        O R D E R
                                 )
UNITED STATES OF AMERICA,     )
    Respondent.              )
_____)

**THIS MATTER** is before this Court upon an initial review of the petitioner's "Motion To Vacate, Set Aside, Or Correct Sentence" under 28 U.S.C. §2255, and on his "Application To Proceed In Forma Pauperis," both filed August 4, 2006. For the reasons stated herein, the petitioner's IFP Application will be <u>dismissed</u> as moot; and his Motion to Vacate will be summarily <u>denied</u> and <u>dismissed</u>.

### I.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Pertinent to this Motion, the record reflects that on March 3, 2005, a federal Indictment was filed, charging the petitioner with bank robbery, in violation of 18 U.S.C. §2113(a) (Count One), and with bank larceny, in violation of 18 U.S.C. §2113(b) (Count Two). After initially pleading "not guilty" to the two charges, on April 28, 2005, the petitioner entered into a written

Plea Agreement with the government.

By the terms of the parties' Agreement, the petitioner promised to plead guilty to Count One in the Indictment.  In exchange for that promise, the government agreed to seek a dismissal of Count Two at the conclusion of the petitioner's case.  In addition to those promises, the parties' Agreement set forth the petitioner's stipulations that his Adjusted Offense Level was 22.  However, the Agreement also noted that "[n]otwithstanding any recommendations in the Plea Agreement . . . , if the Probation Office determine[d] from the [petitioner's] criminal history that . . . Career Offender applie[d], that provision may be used in determining the sentence.

With regard to the petitioner's post-conviction rights, the Plea Agreement reported that he and his attorney had discussed his rights to a direct appeal and to collateral review, and had determined whether there were any potentially meritorious issues which might be relevant to an appeal or collateral motion.  In light of those discussions, the petitioner agreed to waive the vast majority of his direct appeal and collateral review rights.

However, the parties's Agreement preserved the petitioner's right to challenge his conviction and/or sentence on the grounds of ineffective assistance of counsel and prosecutorial misconduct.  The parties' Agreement further preserved the petitioner's right to challenge his sentence on the limited ground that "one

2

or more findings on guideline issues were inconsistent with the explicit stipulations contained. . .in the plea agreement . . . , or on the basis of an unanticipated issue that arises during the sen-tencing hearing and which the District Judge finds and certifies to be of such an unusual nature as to require review by the Fourth Circuit Court of Appeals."

Next, on May 16, 2005, the Court conducted a Plea & Rule 11 proceeding in this matter. On that occasion, the Court engaged the petitioner in its standard, lengthy colloquy to ensure that his guilty plea was being intelligently and voluntarily tendered. After placing the petitioner under oath and hearing his answers to all of its questions, the Court determined that the petitioner's guilty plea was knowingly and freely made. Therefore, the Court accepted the petitioner's plea.

Next, on July 12, 2005, the petitioner's counsel filed a "Motion For Downward Departure," seeking a reduced sentence on the basis of the petitioner's "extraordinary acceptance of re-sponsibility." According to that Motion, once the petitioner was arrested, he immediately confessed his guilt to at least two police officers, and he provided a written confession to the au-thorities. Therefore, defense counsel asserted that the petitioner's willingness to cooperate even before any charges had been filed against him warranted a reduced sentence.

Not surprisingly, however, the government opposed the peti-

tioner's Motion. For its part, the government pointed out that the instant offense of conviction had included the petitioner's threat of harm to a bank tellers; and that the petitioner had a "significant" criminal history, which history included both state and federal convictions.

On August 19, 2005, the Court held the petitioner's Factual Basis & Sentencing Hearing. As an initial matter, the Court concluded that the petitioner was not entitled to a downward departure on the basis of his so-called "extraordinary acceptance of responsibility." Next, after determining that the petitioner was a Career Offender due to his having previously sustained convictions for Breaking and Entering and the Sale or Delivery of Cocaine, the Court calculated his Adjusted Offense Level at 29, and his Criminal History Category at Level VI.

Then, based upon the foregoing calculations, the Court observed that the petitioner was facing a term of 151 to 188 months imprisonment. Ultimately, the Court sentenced the petitioner to a term of 151 months imprisonment. The Court's Judgment was filed on September 2, 2005; however, the petitioner did <u>not</u> file a direct appeal.

Rather, on August 8, 2006, the petitioner filed the instant Motion to Vacate. By this Motion, the petitioner sets forth two claims: (1) that he was erroneously sentenced as a Career Offender; and (2) that his attorney was ineffective for having failed

4

to object to, or to otherwise challenge his Career Offender designation. Despite his beliefs to the contrary, however, the petitioner's claims both must be summarily rejected.

## II. ANALYSIS

1. **This Court is authorized to promptly review and dismiss any §2255 motion which does not contain a claim that entitles the petitioner to relief**.

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . . " in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. In the event it is determined that the petitioner is not entitled to relief, the reviewing Court must dismiss the motion.

Following such directive, this Court has reviewed the petitioner's Motion to Vacate and the pertinent record evidence. As hereafter explained, such review clearly establishes that the petitioner is not entitled to any relief on his claims.

2. **The petitioner's claim of sentencing error is barred by the waiver provison set forth in his Plea Agreement**.

By his first claim, the petitioner asserts that the Court erred in concluding that he is a Career Offender. More particularly, while the petitioner concedes that he previously had

5

sustained convictions for a crime of violence, i.e., felony Breaking and Entering, and for a felony drug offense--Sale or Delivery of Cocaine, he claims that he still should not have been designated a Career Offender under the U.S. Sentencing Guidelines. According to the petitioner, his Career Offender status was erroneously imposed because U.S.S.G. §4B1.1 required the Court to treat those two prior sentences as "related" and not to count them separately for Career Offender purposes.

Notwithstanding the foregoing argument, however, it is clear on this record that pursuant to the terms of his valid and enforceable Plea Agreement, the petitioner has waived his right to raise this challenge to his sentence. Indeed, as was previously noted, apart from claims of ineffective assistance of counsel or prosecutorial misconduct, by the terms of his Plea Agreement the petitioner waived his right to challenge his sentence on any ground, except that it resulted from a Guidelines calculation which was inconsistent with "an explicit stipulation" in that Agreement.

Here, there were no explicit stipulations in the Plea Agreement stating that the petitioner could not be designated as a Career Offender, or that the subject two convictions were "related," or otherwise beyond the Court's consideration for Career Offender purposes. On the contrary, the Plea Agreement actually noted the possibility that the petitioner could be

designated a Career Offender. Specifically, the relevant language informed the petitioner that "if the Probation Office determine[d] from the [petitioner's] criminal history that . . . [the] Career Offender [provision] applie[d], that provision [could] be used in determining the sentence." Consequently, the instant challenge cannot be exempted from the Plea Agreement's waiver clause under the "explicit stipulation" provision.

Moreover, this particular claim was not deemed unusual and, therefore, certified by this Court for direct review, thereby providing an alternative ground for exempting the matter from the Plea Agreement's waiver provision. Indeed, the petitioner did not even pursue an appellate review of this claim following the imposition of his sentence.

The Fourth Circuit repeatedly has approved the knowing and voluntary waiver of a defendant's appellate rights. See, e.g., United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); United States v. Davis, 954 F.2d 182, 185-86 (4th Cir. 1992); United States v. Wessells, 936 F.2d 165 (4th Cir. 1991); and United States v. Wiggins, 905 F.2d 51, 52-54 (4th Cir. 1990) (defendant may waive right to appeal, just as he may waive more fundamental rights such as the right to counsel and the right to a jury trial). Consequently, inasmuch as the petitioner has not alleged or suggested that his Plea Agreement somehow is invalid, this Court concludes that the Agreement's waiver provision is valid

and fully enforceable, and that it stands as an absolute bar to the petitioner's attempt to challenge his sentence on this specific basis.

### 3. **The petitioner's claim that counsel was ineffective for failing to challenge his Career Offender designation is baseless**.

Although the petitioner is not precluded from arguing that counsel was ineffective for having failed to challenge his Career Offender designation, such fact is of little consequence in light of the record of this case.

With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. <u>Id</u>. at 689; <u>see also</u> <u>Fields v. Attorney Gen. of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir.), <u>cert. denied</u>, 474 U.S. 865 (1985); <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065 (1984); <u>and</u> <u>Marzullo v. Maryland</u>, 561 F.2d 540 (4th Cir. 1977), <u>cert. denied</u>, 435 U.S. 1011 (1978).

Under these circumstances, the petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at 1297,

citing Hutchins, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

Moreover, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

Most importantly, a petitioner who alleges ineffective assistance following entry of a guilty plea has an even higher burden to meet. See Hill v. Lockhart, 474 U.S. at 53-59; Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir.), cert. denied, 488 U.S. 843 (1988). The Fourth Circuit described the petitioner's additional burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have

9

>           pleaded guilty and would have insisted on
>           going to trial."

Hooper, 845 F.2d at 475 (emphasis added); accord Hill v. Lockhart, 474 U.S. at 59; and Fields, 956 F.2d at 1297.

At the outset of its analysis of this claim, the Court notes that the petitioner does not assert or even suggest that but for counsel's alleged error, he would have pled "not guilty" and insisted on going to trial. Therefore, it is not at all likely that the petitioner will be able to establish prejudice for this claim in any event.

Turning to his actual claim, the Court notes that in his Motion to Vacate, the petitioner concedes that at the time he was sentenced by this Court, he met the age criteria of the Career Offender provisions under U.S.S.G. §4B1.1(b), and that his offense of conviction (bank robbery) was a qualifying crime of violence. Thus, the petitioner's challenge to his Career Offender designation is predicated solely upon his belief that his prior convictions for Breaking and Entering and Sale or Delivery of Cocaine were "related" because those matters were consolidated for sentencing by a North Carolina court.

Application Note 3 for the Career Offender provisions set out in U.S.S.G. §4B1.2(c) explains that the definitions and instructions for computing Career Offender status are the same as those which are to be used to determine prior criminal history under §4A1.2. By §4A1.2(a)(2), the Court is instructed that

"[p]rior sentences imposed in unrelated cases are to be counted separately." However, [p]rior sentences imposed in related cases are to be treated as one sentence . . . ."

More critically here, turning to Application Note 3 for §4A1.2, that provision explains that "[p]rior sentences are <u>not</u> considered related if they were for offenses that were separated by an intervening arrest . . . " (emphasis added). In such a case, the sentencing court is required to separately count and assign criminal history points for all such prior sentences. However, if no intervening arrest was made, <u>and</u> the offenses either: "(A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (c) were consolidated for sentencing," then such sentences must be treated as related and counted only once.

A careful reading of the foregoing provisions makes it apparent that a sentencing court need not even consider whether or not a defendant's separate sentences were consolidated for sentencing when the crimes to which those sentences correspond were separated by an intervening arrest. To put it another way, when criminal offenses are separated by intervening arrests, those matters must be treated as unrelated notwithstanding whether or not they received a consolidated punishment.

In the present case, the record reflects--and the petitioner does not deny--that he committed the felony Breaking and Entering

11

offense, and then was arrested for that matter on January 3, 1993; and that he subsequently committed the felonious drug offenses on January 15, 16 and 25, 1993, and then was arrested for those crimes.  Therefore, applying the relevant Application Note to these facts, the Court was correct to have treated such offenses as unrelated and to have counted them separately for Career Offender purposes.  The petitioner's intervening arrest on January 3, 1993 foreclosed the Court's obligation to treat the two convictions in question as a related, single sentence.

Ultimately, then, the petitioner simply cannot establish that he was prejudiced by his attorney's decision not to challenge the Court's determination in this regard since the Court correctly applied the Guidelines to his case.  Accordingly, the petitioner's claim against counsel must be flatly rejected.

Finally, because there is no filing fee required for a Motion to Vacate, the petitioner's IFP Application will be <u>dismissed</u> as moot.

### IV.  CONCLUSION

The Court's initial review of the petitioner's Motion to Vacate and the relevant record evidence conclusively shows that he is not entitled to a review of one of those claims, and that he is not entitled to any relief on the other one.  Therefore, Rule 4(b) of the Rules Governing Section 2255 Proceedings requires this Court to <u>dismiss</u> the instant Motion to Vacate.

## V. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. That the petitioner's IFP Application is **DISMISSED as moot; and**

2. That the petitioner's Motion to Vacate is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: August 24, 2006

Robert J. Conrad, Jr.
Chief United States District Judge